I would like to start with the basic fact, which is that the plaintiff's alleged misrepresentations were covered by the Federal Securities Law. That allegation was made in the complaint, and of course, in the motion to dismiss, we assume that all the facts stated in the complaint are true. The District Court did not question that assertion and merely addressed that allegation as a common law fraud claim. The District Court in this case, on the appeal, the appellant has argued that the supremacy clause means that the state law doesn't apply to Federal law. But I think that the brief just basically assumes that because the allegation was made and it's assumed to be true, it did not discuss it. And the appellees never addressed that issue. So as we stand here today, it seems to me that there is no dispute that as to those allegations, the misrepresentations are covered by Federal Securities Law. Now, wait a minute. We're doing two different things. One, of course, on ME-12B6 motions, all allegations of fact are taken to be true. Right. But propositions of law, no, that's a different question. I understand that. But I believe that there were mixed allegations of fact in law, and no one has questioned to now the fact that these misrepresentations that were made were covered by the Securities Law. Oh, no, I don't think that's right. And if that, I mean, it was never discussed in the appellate briefs. It was never discussed by the District Court. So ‑‑ I think you meant to say that there's no dispute that the claim is a 10B claim rather than there's no dispute as to which law applies. Right. Oh, I'm sorry. I misunderstood. No. Well, I think ‑‑ Judge Miller's understood. Okay. Well, I'm happy with that characterization of what I'm trying to say. Then that means that as to that 10B claim, the Federal law applies under the Supremacy Clause of the Federal Constitution. Let's assume that to be true. The Federal law has to govern the Federal claim. What I was struck with, going over the record here, was the paucity of Federal law cited by both sides. You're basically, all of the ‑‑ the argument below, almost all the argument and much of the briefing relative to the 12B6 dealt with Arizona law. And the only thing that was ever mentioned by way of Federal law was the Atari case, and that was justifiable. But that was the only Federal law that was cited below. And now we're getting a little bit more Federal law at this level. Correct. I certainly agree. And, in fact, if you read the district court's decision, it's clear that the district court relied on Arizona law to decide that the fraud claim wouldn't hold because there was no justifiable reliance. But that was based on Arizona law and not Federal law. Okay. We're here now. Have you become aware of any Federal law, any Ninth Circuit law that would apply within the context of a 10B claim, such as we have here, where we're dealing with the issue of whether waiver or nonreliance language in a settlement agreement is ‑‑ comprises the factual scenario? I must say, Your Honor, that we've attempted to research that issue, but we were ‑‑ I was associated at a late date, and I have not found any that is specifically on point. But I would say that if this is an issue that concerns the court, and I would not be surprised if it did, then I would ask for leave to submit supplemental briefing on that point. You know, this case is bewildering to me in some aspects, and one of them is procedurally. As I read the district court opinion, she decides it just straightforwardly as a 12B6 motion. That is to say, there are no factual findings. You can transform a 12B6 motion into a summary judgment motion if the parties have produced enough evidence to do that, but I have no indication that that's so. No. I looked, and I assume that I should have found it there. I don't think there was ever an answer. I think there was just a motion to dismiss. That's correct. I looked at the complaint, and at least as far as the complaint shows up in the excerpts, there's nothing attached to the complaint. So what I'm having trouble figuring out is whether it was properly in front of the trial judge at the time she dismisses under 12B6 the actual settlement agreement, which now appears to be at least part of the argument on the other side that, well, whatever the representations might have been or not been as to whether or not there was an ongoing criminal investigation, it's excused because of this clause in the or these clauses in the settlement agreement that says, well, you know, I don't rely on any representations and so on. Was that settlement agreement properly before the trial judge as she decided the 12B6 motion? You know, my understanding, and it's not clear to me either, but my understanding is that that settlement agreement was submitted, I think, as part of the discussion on the motion for reconsideration. Well, the first time I find it in the excerpts is in connection with the motion for attorney's fees. It might have shown up earlier, but I can't find it earlier. Okay. My recall is that it was not part of the initial motion to dismiss. And it might show up as a defense, but I don't think it was in front of the trial judge. I don't think so either. On the motion that we're now dealing with. That's correct. Now, the other side can correct me if I'm mistaken or if you are. No, I believe that you're right, Your Honor. So basically what you're saying is we can assume that there was no extrinsic evidence that was considered by the district judge in connection with the 12B6 motion. Right. And in fact, as I read the district court's decision, the district court – and it was very confusing to me – the district court briefly summarized the allegations of the complaint and referred – made one reference to the purpose by – for which the defendants here and the appellees here sued Ms. Thompson. And that was to prevent her from cooperating with a federal criminal investigation. And that was an allegation that was made by Ms. Thompson in her complaint. And the district court seized on that, and that's the only basis that I can find for its later conclusion, that as stated above, you know, there were – you know, she knew that there was this criminal investigation already going on. And to me – She seized – I'm sorry. I slipped the cog. She seized on what? You said it, but I missed it. I'll try to find the language. The district court made a statement, and it's order. And that statement said something to the effect that, as stated above, the plaintiff, who was Ms. Thompson, basically knew that there was a criminal investigation. And that was based on the – Third paragraph in Roman 3A. Well, I'm trying to find my copy of the decision here. I've got one of these printouts, so I'm just not paginating it properly according to what you're saying. You're talking about the district court's decision reported in Fed Sup? Right. Let me see. Going to 3A. It said, yes, it's the second paragraph. As noted above, Ms. Thompson had no right to rely on statements made by the attorneys opposing her. Right. And the problem with my copy is that there's a half of a quotation, and I can't tell if the court is quoting But if it is not quoting Atari, the only reference noted above is the brief description that plaintiff claimed that she had been sued by YPNet to prevent her from cooperating with a federal criminal investigation. And that's the only factual basis for the – as I can see, that the district court made for saying that Ms. Thompson had no justifiable reliance. I have to say, let me say it the way I think it, and I may or may not be saying what you're saying, is as I read the district court's order, including this paragraph, the district judge is making no finding whatsoever as to what was said or as to what Ms. Thompson knew at the time it was said. She's saying, I don't need to know that because whatever might have been said by the lawyer doesn't make any difference because she has no right to rely on what the lawyer said. But I see no factual finding as to what was said or not said. And, of course, any factual finding would have had to be as alleged in the complaint, because you can't – this is only 12b-6. But as I read it, she makes no finding whatsoever. Well, I – you know, I think I was trying to give her the benefit of the doubt, but I think you very well could be correct, because other than that one reference, and I'm not sure whether that's part of a quotation or not from another case, is that I don't see any basis for her making that decision other than saying, based on Arizona law, you can't rely ever on the statements from an opposing counsel. Well, she hasn't been making any finding of fact because this is a 12b-6. Right. She can't make findings of fact. No, but I mean, when you're ruling on a motion to dismiss, I think you can take the, you know, the allegations that are on the face of the complaint, and she may have been doing that, but, you know. Witnesses have some allegations in the complaint that Ms. Thompson had knowledge, at least in 2002, that TULO was the target of an investigation, a criminal investigation. That, I, hold on a second here. I think that may be what the Lerner District judge was saying when he was citing, or she was citing, a TOWER Corporation. If the investor already possesses information sufficient to call the representations into question, he cannot claim later that he relied on or was deceived by the lie. That's not page 7 of the complaint, paragraph 21, where there's a reference to the, at least the investigation of TULO taking place. Right. Well, yeah, I think that that might have been what the district court was referring to. The problem is that that paragraph says the defendants knew it, not that Ms. Thompson knew it. Well, let me see. Hold on. I have some other paragraphs here. Well, that's right. Judge Fletcher's right. You'll find no allegation in the complaint that Ms. Thompson knew that TULO was a target of a federal investigation. That's the basis of the 10B claim, that she had no information and that there was an omission at the time she entered into the settlement agreement. Well, not only an omission, but an affirmative representation that there was no investigation. As I look at things, Your Honor, I think that Judge Fletcher's take on the record is correct in that I don't think that the court found anything in the complaint on which it based its finding that there was no justifiable reliance. I think that the district court relied only on the fact that it was a statement made by an imposing attorney. And based on Arizona law, it couldn't, you know. And it might or might not have been right as to Arizona law, which is a different question. Right. But the point you're arguing now is this is a question of federal rather than Arizona law. Yes, absolutely. And if you look at justifiable reliance, I just want to spend a minute or two on the court relied on and certainly that appellees rely on, if you look at Atari, it's clear that Atari says basically that it's a factual issue as to whether there was justifiable reliance, that you can't, based on what's alleged in this case, simply dismiss the claim. In Atari, if you look at the discussion in Atari, there was a purchase of Federated by Atari, and there, there was a continuous accumulation of information by the purchaser where the purchaser became more and more convinced that the financial statement of Federated had been overstated. And then finally, they nevertheless went ahead with the deal because they figured that if they said, no, we want the financial statements corrected, that it would cause the fall of this house of cards and the creditors would call in all their debts and Federated would go under and it would lose any value. And on that basis, the court said, well, there's no justifiable reliance. Here, the facts are entirely different, that if Ms. Thompson knew anything, it was as of 2002, and yet the misrepresentation was made two years later, and she was no longer a part of the company. She had no, she was not part of the loop of information. She didn't know about the other case that had been settled where the, Mr. Tullo was asking his opponents to write to the U.S. attorney and say, please don't. Is it your position that your client did not know there was a pending criminal investigation targeted at Tullo? My position is that as of 2004, my client could not have known whether or not Mr. Tullo was still under investigation. And the question was, as it's alleged, is there a pending criminal investigation of him? Now, there may have been an earlier one, but sometimes criminal investigations end without any accusation. This is the allegation that I'm looking at right now, paragraph 36B. The Lewis and Rocca defendants initiated the WP litigation against Thompson, your client, in an effort to distract her from her, quote, whistleblowing, unquote, regarding YP.net's failure to disclose the pending criminal investigation targeted at Tullo. She couldn't very well whistleblow without knowing about it. Right. And that was in 2002. Well, this refers only to 2002. Yes. Right. Because she resigned. And she did know about the criminal investigation targeted at Tullo in 2002. Right. What she didn't know was what had happened to that in the meantime. Absolutely. And then she relied upon Lewis and Rocca when they told her that's gone away in 2004 before she signs the settlement agreement to get the stock which she wants to sell. Yes. Okay. I got you. And I would say that the fact that Mr. Tullo was asking his opponents in another case to say, please don't prosecute me or end the investigation, he thought that the, certainly thought that it was possible that the investigation could be ended. So it was reasonable for Ms. Thompson and two years later to say, look, is there still a pending investigation of Mr. Tullo? And because she would not know whether that was the case or not. Counsel, refresh my memory. Atari was not a 12B6 case, was it? Wasn't the record fleshed out in Atari? Yes. Oh, that's true. I think it was a motion for summary judgment. Summary judgment. That's my recollection. I can check on that. But isn't your best argument here that before this case gets knocked out, the fact should be fleshed out, there should be a chance for both sides to discover whether reliance was justifiable unless there is a per se Ninth Circuit rule or should be a per se Ninth Circuit rule that once you sign a settlement agreement with this kind of language, you are barred from bringing a claim under 10B? Yes. And I would just point out that in the Erisman case, there is a concurring opinion by Judge Rovner who says that whether a non-reliance clause in a settlement agreement controls is a factual issue. You have to consider all the circumstances. So I would certainly say that, yes, this should be fleshed out and both sides should be allowed the chance to produce all their evidence. I think we've got your argument in the hand. Let's hear from the other side and then you'll get a chance to respond. Thank you. May it please the Court. My name is Todd Kerr. I'm appearing on behalf of the law firm of Lewis & Rocha and individual partners, George Paul, Tom Morgan and Scott DeWald. Hang on just a second. We need to start the clock. Okay. Appreciate the extra seconds. Your Honors, the Code Defense Counsel has asked that he be given just a couple of seconds at the end and so I'm going to reserve a little time for him. Your Honors, I think today that Justice Baye is focusing in on the right issue and also the right basis for the Court's decision. There are allegations in the complaint that evidence that Ms. Thompson knew about this investigation. And, indeed, that has been the basis for this investigation. What do you mean this investigation? The investigation that was being conducted by, I believe, the United States Attorney's Office and also the IRS. And in the complaint she's referring to a pending investigation when? The entire basis of the underlying litigation. When was the complaint filed? What was the date of filing? The date of filing was, I believe, May 2002. All right. So the allegation, which I read just a moment ago, refers to the pending, what knowledge she had in 2002, right? Now, where is the rest? Where does she allege that she kept finding out about this up until the time that Lewis & Rocha allegedly told her that the investigation no longer existed? Your Honors, again, the first reference to that, which you keyed on, was the paragraph 36. The whole basis for that was that she wasn't a whistleblower. So we start out with, from the proposition, she knew. In 2002. In 2002. Everybody agrees with that. There were other statements by her that showed that she knew about the ongoing investigation. Other statements that are recounted in the complaint? They were admitted in, they were filed in the underlying investigation. I'm not asking that. Are they in the complaint? There's one other, let me refer the court to one other set of, one other allegation, which I think also makes this case a little bit different than what the appellants would want the court to believe. If you look at paragraph 67 of the complaint, we're not talking about a one-off statement that was made by Lewis & Rocha attorneys to Ms. Thompson. They are alleging that there was a series and pattern of misstatements. They say throughout the Y.P. litigation, meaning from 2002. Now, I'm sorry. I think you're sliding off the question. You may not be forgetting it, but I'm in danger of forgetting it. Where else in the complaint do you find things where she alleges that she knew or might well have known in 2004, when the alleged statement by Mr. Paul Lewis & Rocha attorneys was made? And I was trying to explain it's implicit in the allegation in paragraph 67. 67. 67. She is saying that not only did, if you start from the basis that she knew in 2002 and that there were misrepresentations throughout the course of the proceedings, it implies that she knew. Otherwise, there wouldn't have been misrepresentations. What is, read me the language that makes the implication that you're suggesting. The language is throughout the Y.P. litigation. So she's claiming that these allegations were made. Throughout the Y.P. litigation, George Paul was adamant that. Yeah, correct. And so he was making these all the way back in 2002 and all the way through 2004. And the picture that is alleged and pleaded is that she never believed these guys when they told them that there wasn't an investigation. She was a whistleblower, and yet her own allegations say that throughout the entire course of this underlying litigation, she was not believing whatever statements were made. So your argument in front of us now is that we're supposed to conclude, or the district judge is supposed to conclude, from paragraph 37. And from paragraph 67, that she knew that the statement made by Mr. Paul in 2004 was false. And here, Your Honor, the answer. Yes or no. Well, the answer is, those are the only two paragraphs that I know in the complaint other than, and I'll refer the Court to another section, which is paragraph 39. Those are also allegations. She admits in the complaint that the allegation or the status of the criminal investigation was being discussed in open court in the ABF litigation, which, if that was sufficient to put us on notice as a matter of public record, it's also sufficient to put her on public record. I'm having trouble with this argument because she quite explicitly says on the complaint, that in 2004, there was a false statement made by Mr. Paul that she, that deceived her. Now, you may be able to show, when we get to facts, that she knew darn well. But as I read the complaint, she says, that statement was made, it was false, I relied on it to my detriment. There's two problems with their argument. Number one is, is the standard here. She didn't need to know that there wasn't an investigation. Under ATARI, the standard is, if she already possessed information sufficient to call the representation into question. Was there enough that she had to follow up or at least confirm, and the whole basis of our motion to dismiss was, certainly, if she admits in 2002 that she blew the whistle on this investigation and that there are other allegations which suggest she also knew, then she had at least was on inquiry notice that that could have been a misrepresentation. But, counsel, that wasn't the basis of the district judge's finding that Ms. Thompson had no right to rely on statements made by the attorneys opposing her, and then cites the Arizona case of Linder. So the judge is stating that as a matter of law and as a matter of common sense, she shouldn't have relied. She makes no reference to anything in the complaint. She makes no reference to allegations in her decision. She's relying on law and common sense. So if, in fact, the law does not require, in the absence of a per se rule barring the 10B claim, knowledge, or does require knowledge, both before the waiver language is to be operative, then this would be an incorrect statement. The law would not require it. Well, I think, in answer to that, I think a fair reading is she did make reference in her, one of the justices commented before that perhaps she was going back and tying her legal analysis to the allegations of the complaint, and I think she was. If you look at her decision, she specifically refers back to efforts by the law firm to prevent her from going back and preventing her from disclosing information regarding the law. And this is on page 2 of the decision, and this is page 117 of their excerpts of record. We have different paginations. I've got a Lexis printout, so if you can give me sort of like parabet headings or whatever, I don't know. Just help me get there. Is Roman 3, is Roman, where are we? You have Lexis, I have the printout, and then I also have Westlaw here. Your Honor, I think it is in the Roman numeral 1, the first paragraph at the end. Roman 1, the last paragraph just before we get to legal standard? Yes. Okay, so what are you relying on in that regard? The court is specifically referring to paragraphs in the complaint, or at least talking about the fact that this whole lawsuit, underlying lawsuit, was instituted in order to prevent her from blowing the whistle. Are we reading the same paragraph? No, I'm on the factual background section, very first Roman 1. Factual background, and the last sentence reads, of the first paragraph, plaintiffs maintain the Lewis and Rogan defendants instituted this baseless litigation to harass Ms. Thompson and prevent her from disclosing information to law enforcement regarding the criminal investigation. Right, okay. Which is true, I mean, it's in the complaint. Now, one other point we need to make, too, is the complaint is not the only document that the trial court can look at in deciding a Rule 12b-6 motion. And what other documents did she look at? And I believe it was within her discretion also to look at matters of public record. And these were things that ---- additionally, based upon information and belief, Tullow wanted to exhaust Thompson's finite financial resources and destroy her credibility so that she could not be a witness against Tullow in Tullow's upcoming criminal matter. Now, that seems to me to say that at the time she filed her complaint, she had knowledge of the upcoming criminal matter. Oh, clearly. And that she's claiming that you folks, Tullow anyway, filed an action against her to keep her quiet. Now, when did Tullow file that action? The ---- we're talking about the underlying action was filed in May of 2002. 2000. I believe it was 2002. 2002. Yeah, I believe it was 2002. Well, that doesn't get you to 2004. Well, no, and I'm trying to get the Court there, and I was ---- We can tell. And I was ---- that was the ---- that prompted my discussion about the things that the Court can properly look at on a Rule 12b-6 motion. There is established Ninth Circuit precedent, and I refer the Court to the Mack case, but a Court can look at matters of public record in determining whether or not someone stated a claim. And in the public record, in the underlying case, and these were attached to our briefs below, she filed a motion for reconsideration of an adverse ruling that she got in this same case we're talking about that was filed in 2002. You know, it was, I believe, in the fall of 2003. And in that motion for reconsideration, she represented to the Court that she was entitled to relief because she was busy cooperating with the investigation that was going on of Angelo Twillow. So one of the bases that we move on is you can't make a statement, you can't go into court and admit that type of knowledge about the ongoing criminal investigation, and then come back in the same, in a related matter, and say, well, I did not know about it. But my problem with that is, well, two things. You say it's permissible for a judge to rely on that. Did the judge rely on that? And I believe the Court was that filing you just referred to in front of the judge when she made her 12b-6 ruling. That was before the Court, in the record, when she made her Rule 12b-6 ruling. And I believe she did. I thought you said it was attached to a motion for reconsideration. No, well, that's when she filed it. That's how she attached it to. This is a statement she made in a motion for reconsideration. That's correct. This is what Thompson represented to the Court, and we attached that to the papers below. It was in front of the judge, and in answer to an earlier... I'm sorry, things are sliding around on me too much. Okay. You attached what? When? We attached that copy of the motion for reconsideration that Thompson filed in the underlying litigation to our motion to dismiss papers. And they're in the record. If you want to look at it, they're... They're in our excerpts of record. They begin on... It's Exhibit 1 to our motion to dismiss below, and it starts at L-R-S-E-R 20 and goes on for about 10 pages. And so that was... That was the basis for her ruling. And as I read her ruling, she says, as a matter of law and of common sense to... This is a double quotation of Judge Miller quoting the district judge. She doesn't say, as a matter of the attachment that I see that she did to her earlier case and so on. There's nothing. It's just, as a matter of law, you can't rely on a lawyer. Your Honor, I disagree to a certain extent. I will grant that there are some parts of this opinion where the dots aren't connected very well. But having said that, I think she did. She got the right test. I don't think she did get the right test. She quotes... She cites Arizona law for the proposition that you can't trust a lawyer. Well, Arizona law is not 10b-5 law. And it's a separate question under 12b law whether a statement of a lawyer in connection with, I'll call it the sale of stock, cannot be relied upon. But the argument that they make, that she did not rely on Federal law in disposing of the Rule 10b-5 claim, is just not right. She cites Atari. She goes into the same standard and test that we talked about earlier. And she said, she said... She cites Atari and she quotes Atari and she quotes Atari's section regarding if you have knowledge, you can't rely. And your position is, even if she didn't say so, if the facts are such that the Atari rule is invoked here, we should sustain the ruling on alternate grounds. Correct. Because she got the right test. She cites Atari. She quotes Atari. And in the very next sentence, part of that paragraph, she cites Linder saying you can't trust a lawyer. And one of our arguments we make in the paper is that decision can stand without... Drop off the Linder. And Linder isn't all that bad because Linder is a justifiable reliance case as well. But that's state law. Yeah, it is. And it has nothing to do with the 10b claim. That's right. And we've never said it doesn't. But their argument that the district court's one citation to a single Arizona case nullifies the Rule 10b-5 analysis is just not wrong. Well, there were two cases. She also cited Paradigm. She said that Ms. Thompson had no right to rely on the Arizona case of Paradigm where the plaintiff in Paradigm was an intended beneficiary of the attorney's work. Once again, not a 10b case. Let me ask you a question, sir. Can I answer that really quick? Yes, please. It's one of the problems we have, too, is she's lumping negligence and fraud claims. Some are duty-based, others aren't. I would submit to the court that the Paradigm line of reasoning had to do with the professional negligence case. But that's... We don't know because, as I think you just acknowledged, she's lumping some common law claims with a 10b claim. And granted, I mean, you look at the order, and she's included all of that analysis under one... May I ask you the same question I asked of Mr. Rosenthal? Have you become aware of any Ninth Circuit cases dealing with this kind of a context? We're talking about a context comprised of a 10b claim, an agreement, a settlement agreement of some kind, and the issue is whether or not language in the agreement, whether it's waiver language or non-reliance language, should be a bar. Yes, Your Honor. And we did, going back to your prior comments, we have found, I don't know if Ninth Circuit, but there is plenty of Federal law, and we cited to the Mergent case, the Rissman case. Those are... Did you come across the Burgess or Petro Venture cases? I didn't, Your Honor. Okay. Sounded like they might be interesting reading, but I didn't. But the point of our non-reliance arguments, and the Ninth Circuit case of Bank of West is a great case. It has the same type of anti-reliance integration clause language that we have here. And they say if a party is going to promise not to rely on somebody's representations, and then they come back and actually do it, then you can't, as a matter of law, say that your reliance is justifiable. Let me say this. This may take us over, and so be it. We'll just make sure both sides get to say as much as I need to say, because there's some complexities in this case. I think we're now talking about the clauses or paragraphs in the settlement agreement. Correct. Was the settlement agreement in front of the district judge at the time she made her motion on, made her ruling on the 12B6 motion? Yes, it was, Your Honor. In what form was it before her? And it was attached as an exhibit to our motion to dismiss, and it's part of our excerpts of records, and I'll give you, the Court, the site. It is attached as an exhibit to your motion to dismiss. And did she in any way rely on it? I believe she – I don't know the answer to that. I read the opinion, and – I don't think there's a reference in there. And one of the arguments we make in the brief is there are a lot of different ways that we can affirm this ruling below. Even assuming, even if we've got a problem with Linder, we have argued that there were certainly an alternative basis for upholding the decision. Because the result is the right one. Whether you want to go through it on an Atari-based analysis that there was a known risk or she had at least enough information already to call into question the misrepresentation, then you can go that route. The Court can also, because it reviews this de novo, it can affirm on the ground, which was presented to the trial court, regardless of whether or not she talked about it in her opinion, that there was very strong anti-reliance language. And we're talking not just a couple, but a couple pages. Can you point me to, in the ER, if it's in the ER, your motion to dismiss and where that settlement agreement is attached? Yes, Your Honor. It is, our motion to dismiss was the very first exhibit in our supplemental excerpts of records. So I refer you to LR-SER 1. LR-SER 1 through LR-SER 55. Okay, thank you, motion to dismiss. And so where is the settlement agreement? And the settlement agreement is attached as an exhibit to that. Yeah, and where is it? And the specific site is LR, it's exhibit 2 to our motion to dismiss, and the numbers of that are LR-SER 48. I got it. Okay. Through LR-SER 55. So those were. And what in there are you relying on in the sense of she couldn't rely? Specifically in paragraph 3.2b, it says, each party specifically does not rely on any statement, representation, or promise of any other party. There's any other party, not any other party and the party's attorneys. Yeah. And I, that's one of the arguments they make. But look, you have uppercase P and you've got lowercase P. Lowercase P we would submit is everybody. And that's what they're, and that's, and if you look at that, if you combine that also, if you combine that also with the integration clause, and that's not the only thing. They also say that each party has done their own investigation of the relevant facts. I'm not speaking here for my colleagues, but the district judge does not discuss this. And my instinct is to leave it to her in the first instance. To coin a phrase, why don't you tell it to the judge? Let me ask you one last question on that issue. How do you handle section 29A of the Security Exchange Act which says, any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation they're under or of any rule of an exchange required thereby shall be void. I don't know, Your Honor. It's not an argument that they raised below. I would think that it would be a circumstance-based test. And if you look at what happened here, there was a six-week heavy negotiation of a settlement agreement. So you say there was a known right waived. Absolutely. It was, this was a bargain for nobody. This was a hard-fought litigation. Nobody wanted to continue. Nobody wants to be here today. Well, listen, if you bargained for it, you should have put words in it other than party. I mean, if this is a hard-fought and carefully drafted agreement, this is not a very good agreement if you're trying to protect a misrepresentation by a lawyer instead of a party. Which, well, that's an interesting point. We weren't even involved, which is another basis for affirming the result. We had, we weren't even a party to that final one. We didn't even draft that language, okay? A new set of lawyers came in. And so it's a little beyond us how she can then claim that a settlement agreement. A new set of lawyers came in just literally a few days before the settlement agreement was entered into. No, they came in a good five weeks. It was five or six weeks. Yeah, or six weeks. But weren't negotiations already underway? Yeah, they were underway. But what was agreed upon in principle in April is far different than what was finally agreed to at the end of May. Let me ask you this, because there may be some common ground that we all have. Do you agree that 12B-5 liability is not governed by Arizona law? Rule 10B-5? I'm confused. My 12B-6 is in my 10B-5. I do it all the time. The 10B-5 liability question is not a question of Arizona law, but a question rather of Federal law. We agree with that. And we agreed that. And it is one in this case that was decided by and should be decided by the TARP. And do you agree that Linder is irrelevant to the 10B-5 question? Yes. Linder, we would agree that Linder is not relevant to that. That applied to the State law claims. But we also argued that it is. I know. This is a cross-examination. You can say yes or no, and then we get to move on. On the question of what's really at issue if we were to send this back, do you argue that the statement by Mr. Paul, I'll assume for the purpose of the question, was false and at the time known to be false by him? Is that an actionable statement if she had no reason to know of its falsity? I understand that you don't concede that. But if she had no reason to know of its falsity, is that an actionable statement? Yes. We have never argued in this case that lawyers, and that's one of the disappointing things in the brief, we've never argued that lawyers have some license to lie in any event. And that's not the case. But just because. But somehow it seems to me that the district judge might have thought that that was so. Yeah, yeah, yeah. But it may be, to say that there may be, that the statement may be actionable doesn't necessarily mean, though, there could be a cause of action. There could be several circumstances why a court would not recognize a cause of action. And in this case, and I guess this is kind of circular, Your Honor, but we argue that in light of the fact that she knew or had reason to know. I understand that. And then also, alternatively, the alternative basis, which we don't want to have this sent back, we think that the record is fine where it is now and this Court can decide on an alternative grounds, that the disclaimer language, the nonreliance clauses take her out of court. She could not have agreed to that and promised to the whole world that she was reliant, she wasn't relying on anyone, and then come back and file suit. And there is Federal 10b-5 case law on that. And we refer the Court to Rissman, Bank of West, and our briefs go over that. Okay. Your Honor. Mr. Rosenthal, one minute. Okay. I appreciate your time. Thank you, Your Honor. Thank you. Thank you, Your Honor. May it please the Court. I'm Gregory Rosenthal. I represent the co-appellee Capital Detective Agency. I believe the Court's docket might accurately list me as attorney for plaintiff, at least for the argument today. I think so, but the clerk corrected it for us before we came in. That's fine. I do, in fact, represent the co-appellee Capital Detective Agency. Just very briefly, Your Honor, for the reasons set forth in Capital's answering brief, and obviously as have been presented here at oral argument today, the appellants have waived any appeal with respect to Counts 8 and 9 which were the only counts pled against my client, Capital Detective Agency. We join in Lewis and Rocha's brief and in their position on this appeal that the trial court's judgment can and should be sustained in, however, the event the court may choose to remand the matter. Capital requests that any order that the court may issue just reflects that Counts 8 and 9 on appeal were, in fact, waived, and that any proceedings that might take place in the future in the trial court do not involve Capital. I'd like a little sentence that says you guys are out of here. Yes, sir. Thank you. Thank you. A response? Yes. I guess I would like to pick up where I think I left off, which is that the question of the effect of a non-reliance clause is a matter of fact. If you look at Judge Robner's concurring opinion in the Rissman case, which is a case that appellees have repeatedly relied on, she says the reasoning in those cases as well as other cases in this court, and this is at 213F3rd at pages 387 and 388, reveals that all circumstances surrounding the transaction are relevant in determining whether reliance on prior oral statements can be deemed reasonable. Thus, although it may be determinative in many and perhaps most cases, the existence of a non-reliance clause will not automatically preclude damages for prior oral statements. And then she refers to another case, the Giacovini case, and lists seven, eight factors that the courts look to in determining whether a non-reliance clause is, you know, is the end-all and be-all of the case or whether it's simply one factor that the courts will determine. And some of those criteria certainly would seem to me to favor Ms. Thompson, one of them being access to the relevant information, concealment of the fraud, and so on. Let me interject with a question. At the moment, speaking only for myself, but as I indicated, I would personally be inclined not to decide the effect of the settlement agreement clauses but to send it back to let the district judge do that as an initial matter. Would you have an objection to that? No. Okay. I wouldn't. And but I didn't want to address the point that it's a matter of law, and I don't think it is. I think it's a matter of fact. And I think if you look at counsel's arguments, many of the things, in fact, one of the last things he said was that what was agreed on in principle while Lewis and Rocco were on as their attorneys was not what ended up being in the agreement. That's a matter of fact. That has to be established by proof. I would submit it. Thank you very much. The case of Thompson v. Paul is now submitted for decision. We've got one last case on the argument calendar. But before we hear it, we will take a five-minute recess. All rise. This court stands in recess for five minutes. Five minutes.
judges: Fletcher, Bea, Miller